**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                         :  Br. No. 23-10152
DMD SERVICES, INC.             :
            Debtor.            :  Chapter 11

# DISCLOSURE STATEMENT

## I. INTRODUCTION

On January 18, 2023, DMD Services, Inc. ("the debtor"), filed its voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code ("the Code"). The debtor's case is presently pending before the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). Since the filing date, debtor has operated as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Code. On July 25, 2023, debtor filed its Disclosure Statement and proposed Plan of Reorganization.

The purpose of this Disclosure Statement is to provide the holders of claims and interests in the company with adequate information about the company and plan in order make an informed judgment about the merits of approving the plan. Accompanying this Disclosure Statement as Exhibit "A" is the debtor's proposed Plan of Reorganization ("the

plan").

## II. DESCRIPTION AND HISTORY OF THE COMPANY

The debtor was incorporated in Pennsylvania on October 30, 1992. The corporation's President and sole shareholder is Kim Graves ("Graves"). The debtor was formed in order to own real estate which was purchased on or about November 5, 1992 and is located at 899-893 Main Street, Darby PA ("the property").

On or about August 23, 2001 the debtor obtained a mortgage loan ("the loan") in the principal amount of $263250.00 from Interbay Funding LLC ("the creditor") secured by the property. The loan was assigned several times over the years and is presently owned and serviced by Community Loan Servicing LLC ("CLS").

## III. EVENTS LEADING TO BANKRUPTCY

The original loan was modified by the parties on several occasions, the last of which (the "Loan Adjustment Agreement") was entered into on May 22, 2015. The new loan provided for a new 30 year term in the principal amount of $874924.06. The loan allegedly went into default on or about June 1, 2017 and foreclosure proceedings were

commenced by the creditor on or about March 15, 2018. A judgment in foreclosure was obtained by the creditor on or about October 25, 2019 in the amount of $926669.00. Sheriff's sales of the property were scheduled and continued on a number of occasions as the parties attempted to resolve their disputes in Delaware County Common Pleas Court. Although several of the judges presiding over this litigation attempted informally to mediate and assist the parties in resolving the dispute, suggesting amongst other solutions, a lump sum payoff by the debtor to the creditor in an amount roughly equivalent to the fair market value of the property, the creditor was unwilling to negotiate further and a sheriff sale was ultimately scheduled for January 20. 2023.

As stated above, the debtor then filed the instant Chapter 11 petition on January 18, 2023 which stayed the sheriff's sale

## IV. <u>REORGANIZATION STRATEGY</u>

Essential to the debtor's future financial success is the approval of the debtor's plan of reorganization, as set forth below, or an amended version thereof. In support of the proposed plan, the debtor has taken certain actions and

will take further actions as set forth below  to  increase the  likelihood of the plan's success.

The debtor's bankruptcy case is classified as a "single asset real estate" ("SARE")case as defined at  11 U.S.C. Sec. 101(51B) which in this case  means all of the debtor's gross income is derived from lease payments received from it sole tenant Keya Graves, Inc. ("Keya Graves").

Keya Graves is a corporation which actively operates a catering and event reception business on the site. Kim Graves is a one-third owner of Keya Graves along with his wife, and his son Scott Graves, who manages the daily operations of the business.  It  has  approximately 15 other employees. Keya Graves has successfully operated its business at the property since 2018, and its  present 5 year lease with the debtor requires monthly rental payments of $5000.00 per month (plus real estate taxes,  insurance and maintenance)  through  December  2027.(Exhibit  "B").  Keya Graves most recent tax return and  financial statements (Exhibit  "C")  show that   it  is  profitable  and  grossed approximately $27,300.00 per  month.   It  has  made  all rental payments to the debtor in a timely manner since the filing of  this  case.  Likewise, the  debtor  has made all

timely monthly mortgage payments since the filing of its case to the creditor in the amount of $3882.00 which represents the proposed plan payment to the creditor required to amortize the proposed principal amount of $300,000.00 at 9.5% over ten (10) years and which also satisfied the stay requirements for a SARE case pursuant to 11 U.S.C. Sec. 362(d)(3) which now includes the timely filing of a disclosure statement and plan.

**V. SUMMARY OF THE PLAN OF REORGANZATION**

Although not a substitute for a careful reading of the plan, the following is a general discussion of the treatment of Allowed Claims and Allowed Interests under the plan.

The following is a summary of the Plan. The Plan, if confirmed, will be binding on the debtor and all creditors, irrespective of the fact that some creditors may have voted to reject the Plan. All creditors are urged to read the Plan carefully.

**A. CLASSES OF CLAIMS**

The Plan divides the creditors of the debtor into various separate classes. The classes and payments to be made to each class under the Plan are described below:

Class 1: Consists of those creditors who are entitled

to an administrative priority in payment under the provisions of the Code and are to be paid in full from cash on hand at the time of the Court's confirmation of the Plan, except to the extent that these liabilities may be deferred in payment voluntarily.

These creditors include, but are not limited to, the U.S. Trustee for unpaid quarterly fees, if any; unpaid post-petition taxes, if any; debtor's attorney and debtor's accountant, if any. Professionals employed at the expense of the estate of the debtor and entities who may be entitled to reimbursement or the allowance of fees and expenses from the estate of the debtor pursuant to Section 503 of the Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with a final order pursuant to Section 330 or Section 503 of the Code.

Class 2: Consists of the secured claims of the taxing authorities to whom the debtor is obligated to pay taxes, specifically Delaware County, the Borough of Darby and the William Penn School District. No taxing authority has filed a claim in this case as of the claims filing deadline and the debtor is presently due for 2023 real estate tax

obligations for Darby Borough and William Penn. These taxing authorities do not therefore have pre-petition arrearage claims against the debtor. In the event it is determined that any outstanding taxes are due, the taxing authority shall be paid 100% of their allowed claims on the effective date of the plan on behalf of the debtor with funds provided by Keya Graves pursuant to its lease obligations to the debtor. The tax claims will be combined for payment and class voting purposes and Class 2 is impaired if any taxes are presently due and owing.

Class 3: Consists of the allowed secured claim of debtor's sole mortgagee, creditor CLS. The plan restructures this claim to a reduced term of 10 years, to be amortized in full over the 120 months in monthly installments which commenced on February 1, 2023 at the "Till Rate" in effect on that date of the filing of the case. Class 3 is impaired.

Class 4: Consists of the unsecured claim of the first mortgagee CLS. As this the debtor is proposing to pay CLS the cramdown value of its secured claim (far greater in excess of the current appraised value as set forth below), the plan does not provide for any additional payment to this

creditor on any unsecured amount of its claim. Class 4 is impaired.

Class 5: Consists of the only shareholder of the debtor, Kim Graves. Graves shall retain his ownership interest, but shall receive no other distribution under the plan. Graves, pursuant to his ownership of the debtor and part ownership of the tenant will be providing the funding of the plan pursuant to the receipt of monthly lease payments from Keya Graves Inc. It is asserted by the debtor that the retention of Graves's ownership interest does not violate the "absolute priority rule", should this issue arise, as he is contributing rental, real estate and hazard insurance payments as part owner of the tenant and in that the secured creditor is receiving the full value of of its interest in the estate's interest in the debtor's sole asset, the debtor's principal will receive no new equity and will continue to maintain the property and transmit the monthly mortgage payments following receipt of the rental payment from the tenant Keya Graves.

The summary of amounts and treatment of claims to be paid is attached to the proposed plan as Plan Addendum "A".

## VII.  **PROJECTIONS**

Debtor's income projections over a one year period are attached to this  disclosure statement as Exhibit "D".  They essentially reflect the monthly lease  payments to the debtor, mortgage real estate tax and hazard insurance payments  and any reserve as needed for  necessary maintenance

## VIII.  **LIQUIDATON ANALYSIS**

As a condition of confirmation, Section 1129(a)(7)(A)(ii) of the Code requires that each impaired class of claims or interests must receive or retain at least the amount of value it would receive if the debtor liquidated under Chapter 7.

The debtor owns the  real property located at 889-893 Main Street, Darby PA,  which is its sole asset and was valued by the debtor in its schedules at $300,000.00 however an appraisal of the  property was performed after approval by the court on March 31, 2023 by Rittenhouse Appraisals (Exhibit "E") and  the property was valued at $170,000.00, which is somewhat  significantly less than what the debtor valued  it at in its  schedules  and which was the basis for

its proposal to pay the creditor the "cramdown" value of $300,000.00 over 10 years proposed at the outset of the case and also in the attached plan. Based on the recent appraisal valuation, a forced liquidation pursuant to an execution sale following dismissal of this chapter 11 case would not result in the secured creditor receiving the full amount of its claim or even the cramdown valuation amount proposed by the debtor in its plan pursuant to 11 U.S.C. Sec. 1129(b)(2)(A)(i)(II).

If the case was converted to Chapter 7, CLS would then also receive substantially less than it would through the proposed plan, especially in light of the added level of administrative expenses for a Chapter 7 Trustee, his/her attorney, accountant and the auctioneer who would liquidate the property. Thus the amount that this creditor will receive under the proposed plan is far greater than would be received in a Chapter 7 or mortgage foreclosure sale.

. **IX.VOTING PROCEDURE**

The Court has reviewed this Disclosure Statement and entered an Order determining that these documents contain "adequate information" such that creditors can meaningfully

evaluate the plan. A copy of the Order approving the Disclosure Statement is attached. Only after creditors have had an opportunity to vote on the plan will the Court consider the plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the plan may cast their vote for or against the plan by completing, signing and causing the ballot form to be returned to the following address in the enclosed envelope:

TIMOTHY ZEARFOSS, ESQUIRE
143-145 Long Lane
Upper Darby, PA 19082
(610)734-7001

BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00PM ON _____, 2023 TO BE COUNTED IN THE VOTING. BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.

This Disclosure Statement has been approved by the Court in accordance with Section 1125 of the Bankruptcy Code and is provided to all of the known holders of claims against the debtor. The Disclosure Statement is intended to assist creditors in evaluating the plan and in determining whether to accept the plan. Under the Code, your acceptance of the plan may not be solicited unless you receive a copy

of this Disclosure Statement prior to or concurrently with such solicitation.

### A. **Persons Entitled to Vote on Plan**

Only the votes of classes of claimants and interest holders which are impaired by the plan are counted in connection with confirmation of the plan. Generally, this refers to creditors who in some fashion will receive less than full payment of their claims.

In determining acceptance of the plan, a vote will only be counted for a creditor whose claim is duly scheduled by the debtor as undisputed, non-contingent and unliquidated, or who has timely filed a Proof of Claim which has not been objected to or disallowed prior to computation of the votes on the plan. The ballot form itself does not constitute a proof of claim. Unimpaired claims are deemed to have accepted the plan and <u>the debtor also takes the position that the failure to return to debtor's attorney a properly served ballot constitutes an acceptance of the plan.</u>

### B. **Hearing on Confirmation**

The Court will set a hearing to determine whether the plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the

plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Court's Notice of Hearing on Confirmation of the Plan.

## C. **Acceptances Necessary to Confirm Plan**

At the confirmation hearing, the Court must determine, among other things, whether the plan has been accepted by each impaired class. Under Section 1126 of the code, an impaired class is deemed to have accepted the plan if at least 2/3 in amount and more than 1/2 in number of the allowed claims of class members who have voted have voted for acceptance of the plan. Further, unless there is acceptance of the plan by all members of an impaired class, the Court must also determine that under the plan, class members will receive property of a value, as of the effective date of the plan, that is not less than the amount that they would receive if the debtor liquidated under Chapter 7 of the code.

## D. **Confirmation of Plan Without Necessary Acceptances**

The plan may be confirmed even if it has not been accepted by all of the impaired classes if the court finds that the plan: 1) does not discriminate unfairly against such class or classes; 2) such class or classes will receive or

retain under the plan not less that it would receive under Chapter 7 liquidation; and 3)is fair and equitable to such class or classes as set forth in Section 1129(b) of the code. Section 1129(b) of the code requires that among other things, the class must receive the full value of their claims, or if they receive less, no class with junior priority may receive anything. For example, if the plan does not propose to pay the class of unsecured claims in full and this treatment is not accepted by the class, then the junior class of shareholders may not receive or retain property, unless the court approves the contribution by the shareholders of "new value" related to the shareholders participation in equity.

## X. <u>OBJECTIONS TO CLAIMS</u>

Notwithstanding the occurrence of the Confirmation date or the Effective date, debtor may object to the allowance of any claim not previously allowed by final order whether or not a proof of claim has been filed and whether or not the claim has previously been scheduled.

## XI. <u>CONTESTED CLAIMS</u>

Notwithstanding any other provision of this plan, a contested claim will be paid only after allowance by the

Court or upon stipulation of the debtor and the claimant involved, as approved by the Court. If allowed, the contested claim will become an allowed claim and shall be paid on the same terms as if there had been no dispute. While the need for resolution of contested claims will not delay payments of other claims, no distribution shall be made on a contested claim until it is allowed.

**XII. <u>EFFECT OF CONFIRMATION</u>**

    **A. <u>Discharge of Claims; Injunction</u>**

Except as otherwise expressly provided in the plan, the entry of the Confirmation order shall act to permanently enjoin all persons who have held, hold or may hold claims against the debtor as of the Confirmation date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the debtor or property of the debtor with respect to any such claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the debtor thereof, or against the property of the debtor with respect to any such claim, and (d) from

asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the debtor thereof, or against property of the debtor, with respect to any such claim. To the extent, however that the debtor defaults under the terms of the plan and such default is not cured within thirty (30) days after debtor and its attorney receive notice of the default as provided for by the plan, the injunction shall be void.

### B. **Terms of Injunction or Stay**

Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Sec. 362(a) of the Code or otherwise shall remain in full force and effect until the Effective Date at which time the injunction under Section VI of the plan shall be in force.

### C. **Injunction Against Interference with the Plan**

No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the plan and the payments to be made hereunder.

### XIII. **DISBURSING AGENT**

Distribution to creditors shall be made by the debtor, who shall serve as disbursing agent in accordance with the

plan.

## XIV. <u>RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction after the effective date of the plan, until all payments and distributions called for under the plan have been made and until entry of the final decree, with respect to the following matters:

A. To hear and determine objections to claims and to allow or disallow any claim.

B. To fix and award compensation to parties who may be so entitled.

C. To recover all assets and properties of the debtor, wherever located, to the extent necessary for the consummation of the plan.

D. To interpret the provisions of the plan, and to make any order which may be necessary or appropriate to carry out the provisions of the plan.

/s/Timothy Zearfoss_____
Timothy Zearfoss, Esquire
Attorney for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Br. No. 23-10152 |
| DMD SERVICES, INC. | : | |
| Debtor. | : | Chapter 11 |

## PLAN OF REORGANIZATION

DMD Services, Inc. ("Debtor") hereby proposes this Plan of Reorganization pursuant to Title 11 of the U.S. Code, Section 101 et seq.

### I. DEFINITIONS

For the purposes of this plan, the following terms shall have the respective meanings hereinafter set forth. Any term defined in the Bankruptcy Code ("the Code") and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless context otherwise requires.

1.1 "Administrative Claim" means a Claim incurred by the debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under 503(b) of the Code and entitled to a priority under Sec. 507(a)(1) of the Code

1.2 "Allowed Claim" means (a)a claim that has been allowed by a Final Order; (b)a claim which is specified herein to be an Allowed Claim; or (c)a claim timely filed with the Office of the Clerk of the Court or scheduled by the debtor in its schedules as neither unliquidated, disputed or contingent and as to which claim (i)no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Code, the Bankruptcy Rules ("the Rules") or orders of Court or (ii)as to which claim either an objection to the claim or an application to amend the schedules with respect to a claim has been interposed, which objection or application has is determined in favor of the holder of such claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such claim accruing from or after the petition date.

1.3 "Claim" means a claim against the debtor within the

meaning of Section 101(5) of the Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, any claim for reimbursement, contribution, indemnity or exoneration.

1.4 "Claimant" means a person or entity holding a claim or interest.

1.5 "Class" means a group of claims, consisting of claims which are substantially similar to each other, as classified pursuant to this Plan.

1.6 "Confirmation Date" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to this Plan.

1.7 "Confirmation Hearing" means the hearing at which the Court considers the confirmation of this Plan.

1.9 "Confirmation Order" means the Order of the Court confirming the Plan.

1.10 "Contested Claim" means any clam as to which the debtor has interposed an objection in accordance with the Code, which objection has not been determined by a final order resolving the objection.

1.11 "Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or other such court having jurisdiction over the case.

1.12 "Debtor" means DMD Servies Inc..

1.13 "Effective Date of the Plan" means the thirty (30) days following the entry of the Confirmation Order unless the Confirmation Order is stayed, in which case it will be the thirty (30) days following the date of the termination of such stay if the Confirmation Order is not reversed prior to the termination of the stay.

1.14 "Impaired Class" means any class of claims, which is impaired within the meaning of Section 1124 of the Code.

1.15 "Plan" means this plan of reorganization in its present form or as it may be amended from time to time.

1.16 "Priority tax claim" means a claim or portion of a

claim for which priority is asserted under Sec. 507(a)(3) of the Code.

1.17 "Pro Rata" means with respect to any distribution to the holder of an allowed claim of a particular class of the plan on a particular date, the same proportion that the amount of such allowed claim bears the aggregate amount of all claims of such class.

1.18 "Secured claim" means a claim that is a) secured by a valid perfected and enforceable lien on assets of the debtor to the extent of the value of the interest of the holder of such claim in such assets; or (b)a claim which is specified herein as an allowed secured claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

1.19 "Unsecured claim" means any claim, whether or not disputed, liquidated, contingent or arising out of a state court judgment, other than an administrative, priority or secured claim.

## II. CLASSIFICATION OF CLAIMS

For purposes of this Plan, the claims of creditors of the debtor are divided into the following classes.

Class 1: Administrative claims.

Class 2: Secured claims of real estate taxing authorities.

Class 3: Secured claim of CLC (mortgagee)

Class 4: General unsecured creditor claim.

Class 5: Shareholder of corporation.

## III. CLASSES IMPAIRED OR UNIMPAIRED  BY THE PLAN

Class 1 as described above is  not impaired under the plan. Solicitation of acceptance with respect to this class is not required. Class 2 –4  as described above are impaired under the plan and each holder of a claim in such classes is

entitled to vote to accept or reject the plan.

## IV. TREATMENT OF CLASSES OF CLAIMS

4.1 <u>Class 1</u>: Administrative Claims. Each holder of a claim of this class will receive, on the effective date of the plan, cash equal to the allowed amount of the holder's claim, except to extent these liabilities may be deferred in payment voluntarily.

4.2 <u>Class 2</u>: Secured real estate tax claims. As of the date of the filing of this plan the debtor is current on payment of one of the real estate taxes for  which it is liable on an annual basis namely Delaware County. However, the real estate taxes for  the Borough of Darby and William Penn  School District appear to still be due for 2023. If so debtor shall be pay 100% of  these 2023 tax claims on the effective date of the plan in full and then continue to pay these tax liabilities as they come due, prior to being delinquent in future years starting in 2024.

The class 2 annual claim payment amounts  have been estimated, totaled and  combined for  purposes of payment calculation in the  plan payment summary attached hereto as Addendum 1.  Class 2 is  impaired.

4.3  <u>Class 3</u>:  Mortgage creditor's (CLS LLC) secured claim. The holder of this claim shall receive  its claim over 120  months (10 years)at 9.5% interest per annum in monthly installments which  already commenced on February 1, 2023, the first day of the month following the filing date of the case. Class 3 is impaired.

4.4 <u>Class 4</u>: Unsecured claim of the mortgage creditor. CLS LLC. The holder of this claim shall receive no payment on its claim.  Class 4 is impaired.

4.5 <u>Class 5</u>: Shareholder of  the  debtor corporation. At present the only shareholder is Kim Graves. Graves  shall retain his ownership interest, but shall receive no other distribution under the plan.

The summary of  amounts and  treatment of claims to be

paid is attached hereto as Plan Addendum "A".

## V. PROVISIONS FOR EXECUTION OF THE PLAN

5.1 <u>Possession of Assets</u>. The reorganized debtor shall continue in possession of all its property and assets after the effective date.

5.2 <u>Execution of Documents</u>. Prior to the effective date, debtor is authorized and directed to execute and deliver all documents and to take all necessary and appropriate action to execute and implement the provisions of the plan.

5.3 <u>Disbursing Agent</u>. DMD Services Inc, shall be the disbursing agent herein. The disbursing agent shall have the sole and exclusive right to make the distributions required by the plan provided, however, that the disbursing agent shall be required to make the distributions and payments provided for herein. The disbursing agent may hold or invest any funds in one or more accounts, provided that all investments be made in accordance with 11 U.S.C. Sec. 345.

5.4 <u>Final Decree</u>. After the plan has been substantially consummated, the debtor shall file a motion requesting that the case be closed and a final decree issued. The debtor shall file all interim and final plan implementation reports and pay any required fees to the Office of the U.S. Trustee.


## VI. PROVISIONS GOVERNING DISTRIBUTIONS

6.1 <u>Time of Distributions</u>. Distributions pursuant to the plan shall be made by the disbursing agent as provided herein and shall be made, unless otherwise provided herein, on the effective date, or as soon as practicable thereafter, unless otherwise ordered by the Court.

6.2 <u>Delivery of Distributions</u>. Distributions and deliveries to holders of allowed claims will be made at the addresses set forth in the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until debtor is notified of the holder's current address, at which time the all missed distributions will be made to the

holder. All claims for undeliverable distributions must be made to the the disbursing agent on or before the later of (i)the first anniversary of the effective date, or (ii)ninety (90) days after the returned distribution was made. After that date, all unclaimed property will become property of the reorganized debtor, and the claim of any holder with respect to such property will be discharged and forever barred.

6.3 <u>Means of Plan Payments</u>. Payments made pursuant to the plan by the disbursing agent will be made in U.S. funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. Checks issued by the disbursing agent will be null and void if not cashed within ninety (90) days of the date of their issuance. Request for reissuance of any check shall be made to the disbursing agent by the holder of the allowed claim with respect to which the check was originally issued, and must be made within ninety (90) days after the check was voided. After that date, all claims will be discharged and forever barred, and the payment shall be revested in the debtor.

6.4 <u>Setoffs</u>. The debtor may, but is not obligated to setoff against any claim and/or the distributions to be made pursuant to the plan on account of such claim, any claim of any nature whatsoever the debtor may have against the holder of such claim, but neither the failure to do so nor the allowance of any such claim shall constitute the waiver or release by the debtor of any such claim it may have against the holder of such claim.

6.5 <u>Payments Due on Weekends and Holidays</u>. If any payment or act under the plan is required to be made or performed on a date that is not a business day, then the making of such payment or performance of such act may be completed on the next succeeding business day.

6.6 <u>Notices to Debtor</u>. Any notice described in or required by the terms of this plan shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing by certified mail, and if sent to:

DMD Service Inc.
891 Main Street, Darby PA 19023
Attn: Kim Graves

6.7 <u>Default</u>. No default shall be declared under this

plan unless and until any payment due under this plan has not been made within thirty (30) days after written notice to the debtor.

## VII. **EFFECTS OF CONFIRMATION**

7.1 <u>Discharge of Claims; Injunction</u>. Except as otherwise expressly provided in the plan, the entry of the Confirmation order shall act to permanently enjoin all persons who have held, hold or may hold claims against the debtor as of the Confirmation date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the debtor or property of the debtor with respect to any such claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the debtor thereof, or against the property of the debtor with respect to any such claim, and (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the debtor thereof, or against property of the debtor, with respect to any such claim. To the extent, however that the debtor defaults under the terms of the plan and such default is not cured within thirty (30) days after debtor and its attorney receive notice of the default as provided for under Section 6.6 of the plan, the injunction shall be void.

7.2 <u>Terms of Injunctions or Stays</u>. Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Sec. 362(a) of the Code or otherwise shall remain in full force and effect until the Effective Date at which time the injunction under Section VI of the plan shall be in force.

7.3 <u>Injunction Against Interference with the Plan.</u> No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the plan and the payments to be made hereunder.

7.4 <u>Confirmation Order</u>. Except as provided in Section 1141(d) of the Code, and as otherwise provided in the plan, the provisions of the plan and confirmation order shall bind

the reorganized debtor and all holders of claims or interests and will be a judicial determination of discharge of the debtor from all debts that arose before the confirmation date, whether or not a proof of claim based on any such date or liabliity is filed and whether or not a claim based on such date or liability is allowed under Section 502 of the Code and whether or not such holder is impaired under the plan and whether or not such holder has accepted the plan and shall terminate all rights, claims, and interests of such holder, except as provided for in the plan

## VIII. EXECUTORY CONTRACTS

Any executory contracts and unexpired lease of the debtor which are not expressly assumed or rejected by the debtor during this Chapter 11 proceeding is deemed to have been assumed upon confirmation of the plan.

## IX. CONTESTED CLAIMS

Notwithstanding any other provision of this plan, a contested claim will be paid only after allowance by the Court or upon stipulation of the debtor and the claimant involved, as approved by the Court. If allowed, the contested claim will become an allowed claim and shall be paid on the same terms as if there had been no dispute. No payments under the plan shall be made with respect to all or any portion of a contested claim unless and until any and all objections to such claim shall be determined by a final Order. After the effective date of the plan, only the debtor shall have the right to object to a claim. Objections not filed within 60 days of the effective date of the plan shall be deemed waived.

## X. RETENTION OF JURISDICTION

The Court shall retain jurisdiction after the effective date of the plan, until all payments and distributions called for under the plan have been made and until entry of the final decree, with respect to the following matters:

A. To hear and determine objections to claims and to

allow or disallow any claim.

     B. To fix and award compensation to parties who may be so entitled.

     C. To recover all assets and properties of the debtor, wherever located, to the extent necessary for the consummation of the plan.

     D. To interpret the provisions of the plan, and to make any order which may be necessary or appropriate to carry out the provisions of the plan.


               /s/Timothy Zearfoss_____
                Timothy Zearfoss, Esquire
                Attorney for Debtor

**PLAN ADDENDUM "A"**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                          : Br. No. 23-10152
DMD SERVICES, INC.              :
         Debtor.               : Chapter 11

**DEBTOR'S PLAN OF REORGANIZATION SUMMARY OF AMOUNTS AND**
**TREATMENT OF CLAIMS TO BE  PAID**

CLASS 1: ADMINISTRATIVE CLAIMS:

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| 1. Timothy Zearfoss, Esq | Fee app. | IN FULL |
| 2. US Trustee | Qrtrly Fee | IN FULL |

Class 1 claims are to be paid in full on the effective date of plan, except where deferred by agreement.

CLASS 2: SECURED REAL ESTATE TAX CLAIMS:

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| 1. Delaware Co. TCB | $1694.00 | Paid (by CLS LLC) |
| 2.Darby Borough | $9248.19 | $9248.19 |
| . | | (with penalty after 6/1/23 – $10173.02) |
| 3.William Penn School District | $17345.11 | $17345.11 |

Class 2 claims for 2023 are to be paid in full on the effective date of the plan and on a timely basis as they come due each year thereafter within the payment date range set forth on the respective bills.

CLASS 3: SECURED CLAIM OF MORTGAGE CREDITOR

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| CLS LLC | $300,000.00 | $3882.00 |

Class 3 claim is to be  paid in full with 9.5% interest in equal monthly installments having begun on February 1, 2023 the effective over  120  months. Class 3  claim

is impaired.

CLASS 4: UNSECURED CLAIM OF CLS LLC

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|----------|--------------|---------|
| CLS LLC | $700,000.00 | 0.00 |

Class 4 claim to receive no payment under the plan. Class 4 claim is impaired.

CLASS 5: UNSECURED CLAIM OF PECO ENERGY

CLASS 6: INSIDER CLAIM OF KIM GRAVES – NO DISTRIBUTION

/s/Timothy Zearfoss_____
Timothy Zearfoss, Esquire
Attorney for Debtor