IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Br. No. 23-10152 |
| DMD SERVICES, INC. | : | |
| Debtor. | : | Chapter 11 |

# AMENDED DISCLOSURE STATEMENT

## I. INTRODUCTION

On January 18, 2023, DMD Services, Inc. ("the debtor"), filed its voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code ("the Code"). The debtor's case is presently pending before the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). Since the filing date, debtor has operated as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Code.

On July 25, 2023, debtor filed its Disclosure Statement and proposed Plan of Reorganization. The debtor filed this Amended Disclosure Statement on November 25, 2023. The originally filed disclosure statement and proposed plan attached thereto proposed to "cramdown" the under-secured claim of its primary secured creditor Community Loan Servicing ("CLS") and pay the secured portion of the claim of $300,000.00 over a 10 year amortization period (at the appropriate cramdown interest rate of 9.5%) while paying 0%

on the unsecured portion of the claim. Following the filing, CLS filed its Section 1111(b) election form on October 3, 2023, seeking to have its undersecured claim treated as secured for the full amount of its claim as scheduled by the debtor of $1000000.00. The 1111(b) election by CLS necessitated the filing of this amended disclosure statement and plan (Exhibit "A") to provide for the claim's treatment pursuant to the election.

The purpose of this Disclosure Statement is to provide the holders of claims and interests in the company with adequate information about the company and plan in order make an informed judgment about the merits of approving the plan. Accompanying this Disclosure Statement as Exhibit "A" is the debtor's proposed Plan of Reorganization ("the plan").

## II. DESCRIPTION AND HISTORY OF THE COMPANY

The debtor was incorporated in Pennsylvania on October 30, 1992. The corporation's President and sole shareholder is Kim Graves ("Graves"). The debtor was formed in order to own real estate which was purchased on or about November 5, 1992 and is located at 899-893 Main Street, Darby PA ("the property").

On or about August 23, 2001 the debtor obtained a

mortgage loan ("the loan") in the principal amount of $263250.00 from Interbay Funding LLC secured by the property. The loan was assigned several times over the years and is presently owned and serviced by Community Loan Servicing LLC ("CLS").

### III. **<u>EVENTS LEADING TO BANKRUPTCY</u>**

The original loan was modified by the parties on several occasions, the last of which (the "Loan Adjustment Agreement") was entered into on May 22, 2015. The new loan provided for a new 30 year term in the principal amount of $874924.06 payable at 5%. The loan allegedly went into default on or about June 1, 2017 and foreclosure proceedings were commenced by the creditor on or about March 15, 2018. A judgment in foreclosure was obtained by the creditor on or about October 25, 2019 in the amount of $926669.00. Sheriff's sales of the property were scheduled and continued on a number of occasions as the parties attempted to resolve their disputes in Delaware County Common Pleas Court. Although several of the judges presiding over this litigation attempted informally to mediate and assist the parties in resolving the dispute, suggesting amongst other solutions, a lump sum payoff by the debtor to the creditor in an amount roughly equivalent to the fair

market value of the property, the creditor was unwilling to negotiate further and a sheriff sale was ultimately scheduled for January 20. 2023.

As stated above, the debtor then filed the instant Chapter 11 petition on January 18, 2023 which stayed the sheriff's sale.

Beginning the first month following its filing, debtor made monthly payments to CLS in the amount of $3882.00 which represented a payment sufficient to amortize the agreed upon secured portion of CLS claim of $300,000.00 over a 10 year term at 9.5%. CLS has acknowledged receipt and acceptance of these monthly payments. In October of 2023, the debtor and CLS, through their respective counsel, attempted to negotiate a lump sum payment of $310,000.00 to CLS to satisfy in full the entire debt and the release of the mortgage lien on debtor's real estate, however CLS subsequently rejected that offer, thus necessitating the filing of this amended disclosure statement and plan.

IV. **REORGANIZATION STRATEGY**

Essential to the debtor's future financial success is the approval of the debtor's plan of reorganization, as attached hereto, or an amended version thereof. In support of the proposed plan, the debtor has taken certain actions

and will take further actions as set forth below to increase the likelihood of the plan's success.

The debtor's bankruptcy case is classified as a "single asset real estate" ("SARE") case as defined at 11 U.S.C. Sec. 101(51B) which in this case means all of the debtor's gross income is derived from lease payments received from it sole tenant Keya Graves, Inc. ("Keya Graves").

Keya Graves is a corporation which actively operates a catering and event reception business on the site. Kim Graves is a one-third owner of Keya Graves along with his wife and his son Scott Graves, who manages the daily operations of the business. It has approximately 15 other employees. Keya Graves has successfully operated its business at the property since 2018, and its present 5 year lease with the debtor requires monthly rental payments of $5000.00 per month (plus its payment of real estate taxes, insurance and maintenance) through December 2027.(Exhibit "B"). Keya Graves's most recent tax return and financial statements (Exhibit "C") show that it is profitable and grossed approximately $27,300.00 per month in 2022. It has made all rental payments to the debtor in a timely manner since the filing of this case. Likewise, as stated above, the debtor has made all timely adequate protection/

monthly mortgage payments since the filing of its case to CLS in the amount of $3882.00 which in addition to reducing the secured debt also satisfied the stay requirements for a SARE case pursuant to 11 U.S.C. Sec. 362(d)(3) which also includes the timely filing of a disclosure statement and plan.

## V. SUMMARY OF THE PLAN OF REORGANZATION

Although not a substitute for a careful reading of the plan, the following is a general discussion of the treatment of Allowed Claims and Allowed Interests under the plan.

The following is a summary of the Plan. The Plan, if confirmed, will be binding on the debtor and all creditors, irrespective of the fact that some creditors may have voted to reject the Plan. All creditors are urged to read the Plan carefully.

### A. CLASSES OF CLAIMS

The Plan divides the creditors of the debtor into various separate classes. The classes and payments to be made to each class under the Plan are described below:

Class 1: Consists of those creditors who are entitled to an administrative priority in payment under the provisions of the Code and are to be paid in full from cash on hand by the debtor or from payment provided by

KeyaGraves, Inc. at the time of the Court's confirmation of the Plan, except to the extent that these liabilities may be deferred in payment voluntarily.

These creditors include, but are not limited to, the U.S. Trustee for unpaid quarterly fees, if any; unpaid post-petition real estate taxes, if any; debtor's attorney and debtor's accountant, if any. Professionals employed at the expense of the estate of the debtor and entities who may be entitled to reimbursement or the allowance of fees and expenses from the estate of the debtor pursuant to Section 503 of the Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with a final order pursuant to Section 330 or Section 503 of the Code.

The William Penn School District has a post-petition real estate tax bill for school taxes due June 1, 2023 in the amount of $17345.11 which shall be paid on the effective date of the plan.

The Delaware County real estate tax bill is not due until January 1, 2024 (2023 was paid in the amount of $1694.00). The debtor shall continue to remain current on these tax bills in each year thereafter.

Class 2: Consists of the secured claim of any taxing

authority to whom the debtor is in arrears for real estate taxes due pre-petition. The Borough of Darby is the sole taxing authority that has a pre- petition claim against the debtor and is the only creditor in this class. This pre-petition tax claim will be paid over 24 months beginning 30 days following the effective date of the plan at the applicable tax default interest rate of 9%, in the amount of $465.00 per month. Class 2 is impaired.

Class 3: Consists of the allowed secured claim of debtor's sole mortgagee, CLS. CLS has filed its election under Sec. 1111(b), which means that it retains its entire debt as a secured claim of $1,000,000.00 (as scheduled by debtor), although the actual agreed upon value of the debtor's real estate is only $300,000.00. Although the claim of an electing class is treated as secured, "the creditor is entitled only to receive payments over time equal to the total allowed claim, the present value of which (as of the plan effective date) must equal only the secured portion of the claim, i.e., the value on the plan effective date of the secured creditor's collateral" (Norton Bankr. L. & Prac Sec. 102:1(3d ed. 2008).

As the debtor is seeking to retain the real estate collateral as necessary for its reorganization, the debtor

must therefore pay to CLS as an electing creditor a stream of payments that satisfies 2 requirements: 1)the stream of payments must have a present value equal to the value of the creditor's collateral (i.e., the allowed amount of CLS's secured claim before the 1111(b) election -- $300,000.00 plus interest), and 2) the total amount of the creditor's stream of payments must equal the amount of the total debt ($1,000,000.00). The plan therefore proposes to pay the portion of the claim secured up to the value of the real estate of $300,000 over a 10 year term (120 months) in monthly installments which commenced on February 1, 2023 at 9.5% for the first year of the term. The plan proposes to pay the remaining balance of this portion of the secured claim ($281108.00) at the mortgage note contract rate of 5% for 9 years (108 months) in the monthly amount of $3237.60, at which time the $300,000.00 claim secured up to the value of the real estate would be fully amortized. The remaining balance of $603806.00 ($1,000,000.00 less the total of $396194.00 paid through the initial 10 years) would be paid off over the following 15 years without interest in the monthly amount of $3354.48. Class 3 is impaired.

Class 4: Consists of the only shareholder of the debtor, Kim Graves. Graves shall retain his ownership

interest, but shall receive no other distribution under the plan. Graves, pursuant to his ownership of the debtor and part ownership of the tenant will be providing the funding of the plan pursuant to the receipt of monthly lease payments from Keya Graves Inc and any other amounts required to fund the plan. It is asserted by the debtor that the retention of Graves's ownership interest does not violate the "absolute priority rule", should this issue arise, as he is contributing rental, real estate tax and hazard insurance payments as part owner of the tenant, (and as agreed to by the other members of the LLC) and in that the secured creditor is receiving the full value of its interest in the estate's interest in the debtor's sole asset, the debtor's principal will receive no new equity and will continue to maintain the property and transmit the monthly mortgage payments to CLS and any other creditors following receipt of the rental payment from the tenant Keya Graves.

The summary of amounts and treatment of claims to be paid is attached to the proposed plan as Plan Addendum "A".

**VII. <u>PROJECTIONS</u>**

Debtor's income projections over a one year period are attached to this disclosure statement as Exhibit "D". They essentially reflect the monthly lease payments to the

debtor, mortgage, real estate tax and hazard insurance payments and any reserve as needed for necessary maintenance

## VIII. **LIQUIDATON ANALYSIS**

As a condition of confirmation, Section 1129(a)(7)(A)(ii) of the Code requires that each impaired class of claims or interests must receive or retain at least the amount of value it would receive if the debtor liquidated under Chapter 7.

The debtor owns the real property located at 889-893 Main Street, Darby PA, which is its sole asset and was valued by the debtor in its schedules at $300,000.00. Both the debtor and CLS obtained appraisals of the property and have stipulated that the fair market value at present is $300,000.00. As previously discussed CLS made an election under Sec 1111(b) to have its entire claim of $1000000.00 treated as secured and thus paid in that total amount through the debtor's plan. A forced liquidation pursuant to an execution sale following dismissal of this chapter 11 case or stay relief would not result in the secured creditor receiving the full amount of its claim or even the cramdown valuation amount previously proposed by the debtor in its

plan pursuant to 11 U.S.C. Sec. 1129(b)(2)(A)(i)(II).

If the case was converted to Chapter 7, CLS would then also receive substantially less than it would through the proposed plan, especially in light of the added level of administrative expenses for a Chapter 7 Trustee, his/her attorney, accountant and the auctioneer who would liquidate the property. Thus the amount that this creditor will receive under the proposed plan is far greater than would be received in a Chapter 7 or mortgage foreclosure sale.

. **IX.VOTING PROCEDURE**

The Court has reviewed this Disclosure Statement and entered an Order determining that these documents contain "adequate information" such that creditors can meaningfully evaluate the plan. A copy of the Order approving the Disclosure Statement is attached. Only after creditors have had an opportunity to vote on the plan will the Court consider the plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the plan may cast their vote for or against the plan by completing, signing and causing the ballot form to be returned to the following

address in the enclosed envelope:

TIMOTHY ZEARFOSS, ESQUIRE<br>
PO Box 2292<br>
Upper Darby, PA 19082<br>
(610)734-7001

BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00PM ON

_____, 2024 TO BE COUNTED IN THE VOTING. BALLOTS

RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING

UNLESS THE COURT SO ORDERS.

This Disclosure Statement has been approved by the Court in accordance with Section 1125 of the Bankruptcy Code and is provided to all of the known holders of claims against the debtor. The Disclosure Statement is intended to assist creditors in evaluating the plan and in determining whether to accept the plan. Under the Code, your acceptance of the plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**A. <u>Persons Entitled to Vote on Plan</u>**

Only the votes of classes of claimants and interest holders which are impaired by the plan are counted in connection with confirmation of the plan. Generally, this refers to creditors who in some fashion will receive less than full payment of their claims at the time of plan

confirmation.

In determining acceptance of the plan, a vote will only be counted for a creditor whose claim is duly scheduled by the debtor as undisputed, non-contingent and unliquidated, or who has timely filed a Proof of Claim which has not been objected to or disallowed prior to computation of the votes on the plan. The ballot form itself does not constitute a proof of claim. Unimpaired claims are deemed to have accepted the plan and <u>the debtor also takes the position that the failure to return to debtor's attorney a properly served ballot constitutes an acceptance of the plan.</u>

### B. <u>Hearing on Confirmation</u>

The Court will set a hearing to determine whether the plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Court's Notice of Hearing on Confirmation of the Plan.

### C. <u>Acceptances Necessary to Confirm Plan</u>

At the confirmation hearing, the Court must determine, among other things, whether the plan has been accepted by each impaired class. Under Section 1126 of the code, an impaired class is deemed to have accepted the plan if at

least 2/3 in amount and more than 1/2 in number of the allowed claims of class members who have voted have voted for acceptance of the plan. Further, unless there is acceptance of the plan by all members of an impaired class, the Court must also determine that under the plan, class members will receive property of a value, as of the effective date of the plan, that is not less than the amount that they would receive if the debtor liquidated under Chapter 7 of the code.

### D. **Confirmation of Plan Without Necessary Acceptances**

The plan may be confirmed even if it has not been accepted by all of the impaired classes if the court finds that the plan: 1)does not discriminate unfairly against such class or classes; 2)such class or classes will receive or retain under the plan not less that it would receive under Chapter 7 liquidation; and 3)is fair and equitable to such class or classes as set forth in Section 1129(b) of the code. Section 1129(b) of the code requires that among other things, the class must receive the full value of their claims, or if they receive less, no class with junior priority may receive anything. For example, if the plan does not propose to pay the class of unsecured claims in full and this treatment is not accepted by the class, then the junior

class of shareholders may not receive or retain property, unless the court approves the contribution by the shareholders of "new value" related to the shareholders participation in equity.

**X. <u>OBJECTIONS TO CLAIMS</u>**

Notwithstanding the occurrence of the Confirmation date or the Effective date, debtor may object to the allowance of any claim not previously allowed by final order whether or not a proof of claim has been filed and whether or not the claim has previously been scheduled.

**XI. <u>CONTESTED CLAIMS</u>**

Notwithstanding any other provision of this plan, a contested claim will be paid only after allowance by the Court or upon stipulation of the debtor and the claimant involved, as approved by the Court. If allowed, the contested claim will become an allowed claim and shall be paid on the same terms as if there had been no dispute. While the need for resolution of contested claims will not delay payments of other claims, no distribution shall be made on a contested claim until it is allowed.

**XII. <u>EFFECT OF CONFIRMATION</u>**

**A. <u>Discharge of Claims; Injunction</u>**

Except as otherwise expressly provided in the plan,

the entry of the Confirmation order shall act to permanently enjoin all persons who have held, hold or may hold claims against the debtor as of the Confirmation date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the debtor, (b)from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the debtor or property of the debtor with respect to any such claim, (c)from creating, perfecting or enforcing any encumbrance of any kind against the debtor thereof, or against the property of the debtor with respect to any such claim, and (d)from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the debtor thereof, or against property of the debtor, with respect to any such claim. To the extent, however that the debtor defaults under the terms of the plan and such default is not cured within thirty (30) days after debtor and its attorney receive notice of the default as provided for by the plan, the injunction shall be void.

B. **Terms of Injunction or Stay**

Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Sec. 362(a) of

the Code or otherwise shall remain in full force and effect until the Effective Date at which time the injunction under Section VI of the plan shall be in force.

### C. <u>Injunction Against Interference with the Plan</u>

No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the plan and the payments to be made hereunder.

### XIII. <u>DISBURSING AGENT</u>

Distribution to creditors shall be made by the debtor, who shall serve as disbursing agent in accordance with the plan.

### XIV. <u>RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction after the effective date of the plan, until all payments and distributions called for under the plan have been made and until entry of the final decree, with respect to the following matters:

A. To hear and determine objections to claims and to allow or disallow any claim.

B. To fix and award compensation to parties who may be so entitled.

C. To recover all assets and properties of the debtor, wherever located, to the extent necessary for the

consummation of the plan.

D. To interpret the provisions of the plan, and to make any order which may be necessary or appropriate to carry out the provisions of the plan.

/s/Timothy Zearfoss_____
Timothy Zearfoss, Esquire
Attorney for Debtor

# EXHIBIT "A"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
IN RE:                          :  Br. No. 23-10152
DMD SERVICES, INC.              :
          Debtor.              :  Chapter 11
```

## <u>PLAN OF REORGANIZATION</u>

DMD Services, Inc. ("Debtor") hereby proposes this Plan of Reorganization pursuant to Title 11 of the U.S. Code, Section 101 et seq.

### <u>I. DEFINITIONS</u>

For the purposes of this plan, the following terms shall have the respective meanings hereinafter set forth. Any term defined in the Bankruptcy Code ("the Code") and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless context otherwise requires.

1.1 "Administrative Claim" means a Claim incurred by the debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under 503(b) of the Code and entitled to a priority under Sec. 507(a)(1) of the Code

1.2 "Allowed Claim" means (a)a claim that has been allowed by a Final Order; (b)a claim which is specified herein to be an Allowed Claim; or (c)a claim timely filed with the Office of the Clerk of the Court or scheduled by the debtor in its schedules as neither unliquidated, disputed or contingent and as to which claim (i)no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Code, the Bankruptcy Rules ("the Rules") or orders of Court or (ii)as to which claim either an objection to the claim or an application to amend the schedules with respect to a claim has been interposed, which objection or application has is determined in favor of the holder of such claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such claim accruing from

or after the petition date.

1.3 "Claim" means a claim against the debtor within the meaning of Section 101(5) of the Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, any claim for reimbursement, contribution, indemnity or exoneration.

1.4 "Claimant" means a person or entity holding a claim or interest.

1.5 "Class" means a group of claims, consisting of claims which are substantially similar to each other, as classified pursuant to this Plan.

1.6 "Confirmation Date" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to this Plan.

1.7 "Confirmation Hearing" means the hearing at which the Court considers the confirmation of this Plan.

1.8 "Confirmation Order" means the Order of the Court confirming the Plan.

1.9 "Contested Claim" means any clam as to which the debtor has interposed an objection in accordance with the Code, which objection has not been determined by a final order resolving the objection.

1.10 "Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or other such court having jurisdiction over the case.

1.11 "Debtor" means DMD Servies Inc..

1.12 "Effective Date of the Plan" means the thirty (30) days following the entry of the Confirmation Order unless the Confirmation Order is stayed, in which case it will be the thirty (30) days following the date of the termination of such stay if the Confirmation Order is not reversed prior to the termination of the stay.

1.13 "Impaired Class" means any class of claims, which is impaired within the meaning of Section 1124 of the Code.

1.14 "Plan" means this plan of reorganization in its

present form or as it may be amended from time to time.

1.15 "Priority tax claim" means a claim or portion of a claim for which priority is asserted under Sec. 507(a)(3) of the Code.

1.16 "Pro Rata" means with respect to any distribution to the holder of an allowed claim of a particular class of the plan on a particular date, the same proportion that the amount of such allowed claim bears the aggregate amount of all claims of such class.

1.17 "Secured claim" means a claim that is a) secured by a valid perfected and enforceable lien on assets of the debtor to the extent of the value of the interest of the holder of such claim in such assets; or (b)a claim which is specified herein as an allowed secured claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

1.18 "Unsecured claim" means any claim, whether or not disputed, liquidated, contingent or arising out of a state court judgment, other than an administrative, priority or secured claim.

## II. CLASSIFICATION OF CLAIMS

For purposes of this Plan, the claims of creditors of the debtor are divided into the following classes.

Class 1:    Administrative claims.

Class 2: Secured claims of real estate taxing authorities.

Class 3: Secured claim of CLC (mortgagee)

Class 4: Shareholder of corporation.

## III. CLASSES IMPAIRED OR UNIMPAIRED  BY THE PLAN

Class 1 as described above is  not impaired under the plan. Solicitation of acceptance with respect to this class is not required. Class 2 –4  as described above are impaired under the plan and each holder of a claim in such classes is

entitled to vote to accept or reject the plan.

## IV. TREATMENT OF CLASSES OF CLAIMS

4.1 Class 1: Administrative Claims. Each holder of a claim of this class will receive on the effective date of the plan, cash equal to the allowed amount of the holder's claim, except to extent these liabilities may be deferred in payment voluntarily.

4.2 Class 2: Secured real estate tax claim. The secured real estate tax claim of Darby Borough is the sole creditor in Class 2. This creditor shall receive its claim over 24 months commencing 30 days following the effective date of the plan at 9.0% interest per annum, and debtor shall remain current on subsequent real estate taxes due to this taxing authority as well as the others previously identified. Class 2 is impaired.

4.3 Class 3: Mortgage creditor's (CLS LLC) secured claim. CLS filed an election under Sec. 1111(b) to have its entire claim treated as secured. The holder of this claim shall receive its claim secured up to the value of the debtor's real estate over 120 months (10 years) with the first 12 months paid at 9.5% interest per annum in monthly installments which commenced on February 1, 2023, the first day of the month following the filing date of the case. The remaining 108 months shall be paid at the contract rate of 5%, at which time the $300,000.00 claim secured up to the value of the real estate would be fully amortized. The remaining balance of $603806.00 ($1,000,000.00 less the $396194.00 paid through 10 years) would be paid off over the following 15 years without interest. Class 3 is impaired.

4.4 Class 4: Shareholder of the debtor corporation. At present the only shareholder is Kim Graves. Graves shall retain his ownership interest, but shall receive no other distribution under the plan.

The summary of amounts and treatment of claims to be

paid is attached hereto as Plan Addendum "A".

## V. PROVISIONS FOR EXECUTION OF THE PLAN

5.1 <u>Possession of Assets</u>. The reorganized debtor shall continue in possession of all its property and assets after the effective date.

5.2 <u>Execution of Documents</u>. Prior to the effective date, debtor is authorized and directed to execute and deliver all documents and to take all necessary and appropriate action to execute and implement the provisions of the plan.

5.3 <u>Disbursing Agent</u>. DMD Services Inc, shall be the disbursing agent herein. The disbursing agent shall have the sole and exclusive right to make the distributions required by the plan provided, however, that the disbursing agent shall be required to make the distributions and payments provided for herein. The disbursing agent may hold or invest any funds in one or more accounts, provided that all investments be made in accordance with 11 U.S.C. Sec. 345.

5.4 <u>Final Decree</u>. After the plan has been substantially consummated, the debtor shall file a motion requesting that the case be closed and a final decree issued. The debtor shall file all interim and final plan implementation reports and pay any required fees to the Office of the U.S. Trustee.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS

6.1 <u>Time of Distributions</u>. Distributions pursuant to the plan shall be made by the disbursing agent as provided herein and shall be made, unless otherwise provided herein, on the effective date, or as soon as practicable thereafter, unless otherwise ordered by the Court.

6.2 <u>Delivery of Distributions</u>. Distributions and deliveries to holders of allowed claims will be made at the addresses set forth in the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until debtor is notified of the holder's current address, at which time the all missed distributions will be made to the

holder. All claims for undeliverable distributions must be made to the the disbursing agent on or before the later of (i)the first anniversary of the effective date, or (ii)ninety (90) days after the returned distribution was made. After that date, all unclaimed property will become property of the reorganized debtor, and the claim of any holder with respect to such property will be discharged and forever barred.

6.3 <u>Means of Plan Payments</u>. Payments made pursuant to the plan by the disbursing agent will be made in U.S. funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. Checks issued by the disbursing agent will be null and void if not cashed within ninety (90) days of the date of their issuance. Request for reissuance of any check shall be made to the disbursing agent by the holder of the allowed claim with respect to which the check was originally issued, and must be made within ninety (90) days after the check was voided. After that date, all claims will be discharged and forever barred, and the payment shall be revested in the debtor.

6.4 <u>Setoffs</u>. The debtor may, but is not obligated to setoff against any claim and/or the distributions to be made pursuant to the plan on account of such claim, any claim of any nature whatsoever the debtor may have against the holder of such claim, but neither the failure to do so nor the allowance of any such claim shall constitute the waiver or release by the debtor of any such claim it may have against the holder of such claim.

6.5 <u>Payments Due on Weekends and Holidays</u>. If any payment or act under the plan is required to be made or performed on a date that is not a business day, then the making of such payment or performance of such act may be completed on the next succeeding business day.

6.6 <u>Notices to Debtor</u>. Any notice described in or required by the terms of this plan shall be deemed to have been properly given when actually received, or if mailed, five (5) days ,,after the date of mailing by certified mail, and if sent to:
DMD Service Inc.
891 Main Street, Darby PA 19023
Attn: Kim Graves

6.7 <u>Default</u>. No default shall be declared under this

plan unless and until any payment due under this plan has not been made within thirty (30) days after written notice to the debtor.

## VII. **EFFECTS OF CONFIRMATION**

7.1 <u>Discharge of Claims; Injunction</u>. Except as otherwise expressly provided in the plan, the entry of the Confirmation order shall act to permanently enjoin all persons who have held, hold or may hold claims against the debtor as of the Confirmation date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the debtor or property of the debtor with respect to any such claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the debtor thereof, or against the property of the debtor with respect to any such claim, and (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the debtor thereof, or against property of the debtor, with respect to any such claim. To the extent, however that the debtor defaults under the terms of the plan and such default is not cured within thirty (30) days after debtor and its attorney receive notice of the default as provided for under Section 6.6 of the plan, the injunction shall be void.

7.2 <u>Terms of Injunctions or Stays</u>. Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Sec. 362(a) of the Code or otherwise shall remain in full force and effect until the Effective Date at which time the injunction under Section VI of the plan shall be in force.

7.3 <u>Injunction Against Interference with the Plan.</u> No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the plan and the payments to be made hereunder.

7.4 <u>Confirmation Order</u>. Except as provided in Section 1141(d) of the Code, and as otherwise provided in the plan, the provisions of the plan and confirmation order shall bind

the reorganized debtor and all holders of claims or interests and will be a judicial determination of discharge of the debtor from all debts that arose before the confirmation date, whether or not a proof of claim based on any such date or liabliity is filed and whether or not a claim based on such date or liability is allowed under Section 502 of the Code and whether or not such holder is impaired under the plan and whether or not such holder has accepted the plan and shall terminate all rights, claims, and interests of such holder, except as provided for in the plan

## VIII. EXECUTORY CONTRACTS

Any executory contracts and unexpired lease of the debtor which are not expressly assumed or rejected by the debtor during this Chapter 11 proceeding is deemed to have been assumed upon confirmation of the plan.

## IX. CONTESTED CLAIMS

Notwithstanding any other provision of this plan, a contested claim will be paid only after allowance by the Court or upon stipulation of the debtor and the claimant involved, as approved by the Court. If allowed, the contested claim will become an allowed claim and shall be paid on the same terms as if there had been no dispute. No payments under the plan shall be made with respect to all or any portion of a contested claim unless and until any and all objections to such claim shall be determined by a final Order. After the effective date of the plan, only the debtor shall have the right to object to a claim. Objections not filed within 60 days of the effective date of the plan shall be deemed waived.

## X. RETENTION OF JURISDICTION

The Court shall retain jurisdiction after the effective date of the plan, until all payments and distributions called for under the plan have been made and until entry of the final decree, with respect to the following matters:

A. To hear and determine objections to claims and to

allow or disallow any claim.

     B. To fix and award compensation to parties who may be so entitled.

     C. To recover all assets and properties of the debtor, wherever located, to the extent necessary for the consummation of the plan.

     D. To interpret the provisions of the plan, and to make any order which may be necessary or appropriate to carry out the provisions of the plan.

/s/Timothy Zearfoss
Timothy Zearfoss, Esquire
Attorney for Debtor

### PLAN ADDENDUM "A"
### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
IN RE:                        :  Br. No. 23-10152
DMD SERVICES, INC.            :
        Debtor.              :  Chapter 11
```

### DEBTOR'S PLAN OF REORGANIZATION SUMMARY OF AMOUNTS AND TREATMENT OF CLAIMS TO BE  PAID

CLASS 1: ADMINISTRATIVE CLAIMS:

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| 1. Timothy Zearfoss, Esq | Fee app. | IN FULL |
| 2. US Trustee | Qrtrly Fee | IN FULL |
| 3. William Penn S.Dist. | $17345.11 | IN FULL |
| 4. Delaware County Real Estate Tax 2024 | $1694.00 | IN FULL |

Class 1 claims are to be paid in full on the effective date of plan, except where deferred by agreement.

CLASS 2: SECURED REAL ESTATE TAX CLAIM:

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| 1.Darby Borough | $10173.02 @9% | $465.00 (24 mos) |

Class 2 claim is for 2023 and thereafter  is to be paid in full as it comes due each year thereafter within the payment date range  set forth on the  bill.

CLASS 3: SECURED CLAIM OF MORTGAGE CREDITOR

| CLAIMANT | CLAIM AMOUNT | PAYMENT |
|---|---|---|
| CLS LLC | $1, 000000.00 | $3882.00 (12 mos.) |
|  |  | $3237.60 (108 mos.) |
|  |  | $3354.00 (180 mos.) |

Class 3 claim is to be  paid in full with 9.5% interest in equal monthly installments having begun on February 1, 2023 and continuing for 12 months. This claim is then to be paid at 5% interest in equal monthly installments for the next 108 months. The remaining balance of $603806.00 shall be paid in equal monthly installments over 180 months.

CLASS 4: INSIDER CLAIM OF SHAREHOLDER
Kim Graves     --No Distribution.

```
                          /s/Timothy Zearfoss_____
                          Timothy Zearfoss, Esquire
```